An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-674

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

IN THE MATTER OF:

A.P.                                        Durham County
                                            No. 11 J 98


Appeal by Respondent-Father from orders entered 20 February 2012 and 20 February 2013 by Judge Brian C. Wilks in District Court, Durham County. Heard in the Court of Appeals 7 January 2014.


> *Assistant County Attorney Bettyna Belly Abney for Petitioner-Appellee Durham County Department of Social Services.*
>
> *Sandlin & Davidian, PA, by Debra A. Griffiths, for Guardian ad Litem.*
>
> *J. Thomas Diepenbrock for Respondent-Appellant Father.*


McGEE, Judge.


Respondent-Father appeals from the district court's orders ceasing reunification and terminating his parental rights as to his daughter ("the child"). We affirm.

Respondent-Father and Respondent-Mother are the parents of the child, born 8 February 2011. On 24 March 2011, the Durham County Department of Social Services ("DSS") filed a juvenile petition alleging that the child was a neglected and dependent juvenile. DSS took nonsecure custody of the child.

In a separate action, H.B., the father of Respondent-Father, filed a petition in Superior Court, Durham County for guardianship of Respondent-Father. The Clerk of Court of Durham County, pursuant to Chapter 35A of the North Carolina General Statutes, found Respondent-Father "incompetent to a limited extent" and appointed H.B. as guardian of the person for Respondent-Father in an order filed 7 April 2011.

By order filed 22 August 2011, the trial court adjudicated the child a neglected and dependent juvenile. The trial court also found that Respondent-Father's whereabouts were unknown. At that time, paternity had not yet been officially established, and Respondent-Father was referred to as the "putative" Respondent-Father. The trial court held subsequent permanency planning hearings and, on 20 February 2012, the trial court ceased reunification efforts with putative Respondent-Father.

DSS filed a motion to terminate the parental rights of Respondent-Mother and Respondent-Father, as the putative father,

in April 2012, alleging failure of putative Respondent-Father to establish paternity, legitimate, or provide substantial financial support to the child, and abandonment. In July 2012, Respondent-Father was located at the Durham County Jail and was personally served with a summons and petition. A paternity test conducted in August 2012 confirmed Respondent-Father as the father of the child.

Respondent-Father informed DSS that H.B. was his guardian. DSS amended its motion to terminate parental rights in October 2012. DSS alleged that the Durham County Clerk of Superior Court had found Respondent-Father to be incompetent to a limited extent; that Respondent-Father sustained a traumatic brain injury in a car accident; and that due to the head trauma, Respondent-Father had been diagnosed with psychotic disorder, mood disorder, and mild mental retardation. DSS added as grounds for termination neglect, and that Respondent-Father was incapable of providing for the proper care and supervision of the child such that the child was a dependent child pursuant to N.C. Gen. Stat. § 7B-1111(a)(6) (2011).

On 5 December 2012, the trial court held a pre-trial hearing on the motion to terminate Respondent-Father's parental rights. Counsel for Respondent-Father moved to dismiss the

motion to terminate based upon lack of personal jurisdiction over Respondent-Father. The trial court ordered that the motion to dismiss be heard on 10 December 2012 and set the termination hearing for 11 December 2012.

At the motion to dismiss hearing, the trial court heard arguments from counsel, denied the motion, and stated that "the case will proceed to hearing [on the termination motion] tomorrow morning." At the hearing, counsel for Respondent-Father orally moved for the appointment of a guardian ad litem ("GAL") for Respondent-Father pursuant to Chapter 7B of the North Carolina General Statutes, in light of Respondent-Father's diminished capacity. The trial court denied the motion, stating "there is a limited guardian ad litem[1] appointed in the case. The case will not be delayed at this late date[.]"

When the termination hearing was called the next morning, the GAL for the minor child asked the trial court to "clarify for the record" its ruling on the motion for the appointment of a GAL for Respondent-Father. The trial court quoted from N.C. Gen. Stat. § 7B-1101.1(c) and then stated:

> Considering [7B-1101.1(c)] and the fact that the Court may appoint, there are some

---

[1] The trial court refers to H.B. as a "limited guardian ad litem." The trial court should have simply referred to H.B. as Respondent-Father's "guardian."

> instances in which the Court does not have to appoint, pursuant to that statute. And the Court finds that this is one of those situations where the father already has a Guardian ad Litem appointed, a limited Guardian ad Litem appointed, that being his father [H.B] who was properly served, pursuant to the hearing yesterday, properly served with the motion to terminate parental rights. He was served with that motion on November the 1st. He was appointed as a limited guardian on April 7th, 2011, before the Honorable Archie Smith, the Clerk of Durham County Court. Mr. Smith made findings of fact, appointed him as a limited Guardian ad Litem of [Respondent-Father] and made specific findings. The Court has no record that that guardianship has been terminated, so [H.B.] is still a limited guardian for [Respondent-Father]. Because he has a limited guardian, and because 7B-1101.1(c) says that the Court may appoint, the Court does not find that an additional guardian is needed in this particular case, because one already exists for [Respondent-Father].

The trial court proceeded with the termination hearing. By order filed 20 February 2013, the trial court terminated Respondent-Father's parental rights. Respondent-Father appeals.

In his sole argument on appeal, Respondent-Father contends the trial court erred by not inquiring into his competency and by not appointing a GAL. We disagree.

Appointment of a GAL for a parent in a termination of parental rights proceeding is governed by N.C. Gen. Stat. § 7B-1101.1 (2011). Subsection (c) of the statute provides:

> On motion of any party or on the court's own motion, the court *may* appoint a guardian ad litem for a parent *in accordance with G.S. 1A-1, Rule 17* if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. The parent's counsel shall not be appointed to serve as the guardian ad litem.

N.C. Gen. Stat. § 7B-1101.1(c) (2011) (emphasis added). Rule 17 states in relevant part:

> In actions or special proceedings when any of the defendants are . . . incompetent persons, . . . they must defend by general or testamentary guardian, if they have any within this State or by guardian ad litem appointed as hereinafter provided; and if they have no known general or testamentary guardian in the State, and any of them have been summoned, the court in which said action or special proceeding is pending, upon motion of any of the parties, may appoint some discreet person to act as guardian ad litem, to defend in behalf of such . . . incompetent persons[.]

N.C. Gen. Stat. § 1A-1, Rule 17(b)(2) (2013). When the incompetent person already has a general guardian, the trial court still has the discretion to appoint a GAL if the trial court determines such appointment "expedient."

> Notwithstanding the provisions of subsections (b)(1) and (b)(2), a guardian ad litem for an . . . incompetent person may be appointed in any case when it is deemed by the court in which the action is pending expedient to have the . . . incompetent

> person so represented, notwithstanding such person may have a general or testamentary guardian.

N.C.G.S. § 1A-1, Rule 17(b)(3).

In the present case, Respondent-Father had a general guardian at all times relevant to this matter. Pursuant to Rule 17, no appointment of a GAL was required. Though the trial court had the discretion to appoint a GAL notwithstanding Respondent-Father's general guardian, we find no abuse of discretion in the trial court's decision not to do so. Accordingly, the trial court's order terminating Respondent-Father's parental rights is affirmed.

Affirmed.

Judges McCULLOUGH and DILLON concur.

Report per Rule 30(e).